Peter C. Wetherall, Esq.
Nevada Bar No. 4414
WETHERALL GROUP, LTD.
6671 S. Las Vegas Blvd., Suite 210
Las Vegas, Nevada 89119
Telephone: (702) 838-8500
Facsimile: (702) 837-5081
pwetherall@wetherallgroup.com

Mikal C. Watts (*Pro Hac Vice* Forthcoming)
Texas State Bar No. 20981820
mcwatts@wattsguerra.com
Alicia D. O'Neill (*Pro Hac Vice* Forthcoming)
Texas State Bar No. 24040801
aoneill@wattsguerra.com
WATTS GUERRA LLC
5726 W. Hausman Dr., Suite 119
San Antonio, Texas 78249
Direct: (210) 447-0500
Facsimile: (210) 447-0501

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TIFFANY HATCHER, Individually and as Guardian Ad Litem to N.H., a minor,<br><br>                       Plaintiffs,<br><br>      vs.<br><br>WALMART INC.,<br><br>                      Defendant. | Case Number:<br><br><br><br>**PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND** |

       Plaintiff Tiffany Hatcher and Plaintiff N.H., pursuant to Fed. R. Civ. P. 17(c)(1)(A), by and through their undersigned counsel, bring this Complaint for damages against Defendant WALMART INC. (hereinafter, "Defendant") and in support, state the following:

1.     This is an action brought on behalf of Plaintiffs, Tiffany Hatcher (hereinafter, "Plaintiff Mother"), the natural and general guardian and mother of N.H., (hereinafter, "Plaintiff Child"), a minor, arising out of the failure of Defendants to warn about the dangers of prenatal exposure to Paracetamol, also known as acetaminophen (hereinafter "APAP").  As a result, Plaintiffs have suffered permanent injuries and significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life.  Plaintiffs respectfully seek all damages to which they may be legally entitled.

2.     Defendants entirely failed its duty to adequately warn of the hazards of prenatal exposure to APAP, which was a direct and proximate cause of Plaintiffs' injuries and associated damages.

## **STATEMENT OF PARTIES**

3.     At all material times Plaintiffs have been citizens and residents of Clark County, Nevada and the United States.

4.     Walmart is incorporated in Delaware, with its principal place of business in Bentonville, Arkansas.

5.     Walmart is involved in the research, development, testing, manufacture, labeling, production, marketing, promotion, and/or sale of APAP through its over-the-counter store brand, Acetaminophen (hereinafter, the "APAP Products").

6.     Walmart is liable to Plaintiffs for damages they suffered, arising from Defendant's design, manufacture, marketing, labeling, distribution, sale, and placement of the defective APAP Products into the market, effectuated directly and indirectly through its agents, servants, employees, and/or owners, all acting within the course and scope of its agencies, services, employments, and/or ownership.

7.      Walmart is vicariously liable for the acts and/or omissions of its employees and/or agents, who were at all material times acting on behalf of Walmart and within the scope of its employment and agency.

## VENUE AND JURISDICTION

8.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a), based on complete diversity of citizenship between Plaintiffs and Defendants. *See supra* ¶¶ 3–4.

9.      The amount in controversy exceeds $75,000.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

11.     Defendants have and continue to conduct substantial business in the State of Nevada and in this District, distributes the APAP Products in this District, receives substantial compensation and profits from sales of the APAP Products in this District, and has made material omissions and misrepresentations and breaches of warranties in this District and caused injuries in this District to Plaintiffs, among others, so as to subject Defendants to in personam jurisdiction in this District. It was foreseeable at all times that Defendants could be haled into court in the State of Nevada for its conduct that caused injuries to citizens of Nevada, like Plaintiffs in this action. An exercise of in personam jurisdiction by this Court over Defendants comports fully with due process and does not offend traditional notions of fair play and substantial justice.

12.     Defendants are registered to transact business in Nevada.

## FACTS COMMON TO ALL COUNTS

A.      **APAP Is Marketed as the Safe Pain Reliever for Pregnant Women, but APAP Can Cause ASD/ADHD in Children**

13.     APAP is widely used by pregnant women to relieve pain during the term of their pregnancy.

14. APAP was initially discovered in the late 1800's.

15. APAP was introduced to the US market in 1955 as the first aspirin-free pain reliever. APAP was originally marketed and sold as a product to reduce fever in children, packaged like a red fire truck with the slogan, "for little hotheads."

16. APAP is sold in billions of units annually in North America alone.

17. APAP has long been marketed as the safest, and the *only* appropriate, over-the-counter pain relief drug on the market for pregnant women.

18. More than 65% of pregnant women in the United States use APAP during pregnancy.

19. Based upon information and belief, a majority of women who use APAP during pregnancy do so electively for the treatment of headaches, muscle pain, back pain, and infection.

20. These pregnant women electively choose to take APAP because Defendants have marketed APAP as a safe pain reliever for pregnant women.

21. However, increasing experimental and epidemiological research shows that prenatal exposure to APAP alters fetal development, which significantly increases the risks of neurodevelopmental disorders, including but not limited to, autism spectrum disorder ("ASD") and attention-deficit/hyperactivity disorder ("ADHD").

22. Undisturbed development of the human brain in utero is vital to the health and wellness of a child's development. The human brain is vulnerable and extremely sensitive in utero. During this sensitive time-period in utero, certain chemicals have been found to cause permanent brain injury at low exposure levels.

23. Once ingested by the mother, APAP is known to readily cross the placenta and blood-brain barrier.

24.     ASD is a serious neurological and developmental disorder that affects how people interact with others, communicate, learn, and behave.

25.     There are three functional levels of ASD, with Level 1 requiring support with activities of daily living, Level 2 requiring substantial support with activities of daily living, and Level 3 requiring very substantial support with activities of daily living.

26.     Treatments for ASD include behavioral management therapy, cognitive behavior therapy, joint attention therapies, medications, occupational therapy, physical therapy, social skill training, and speech-language therapy.  Treatment for ASD lasts a lifetime, as there is no cure.

27.     ADHD is a chronic neurodevelopmental disorder resulting in attention difficulty, hyperactivity, and impulsiveness.

28.     ADHD begins in childhood and persists through adulthood.  ADHD contributes to low self-esteem, troubled relationships, and difficulty with school, work, and familial relationships.

29.     Treatments for ADHD, include, but are not limited to, chronic medication usage and various therapies.  Treatment for ADHD lasts a lifetime, as there is no cure.

30.     In or around 2018, the Center for Disease Control and Prevention ("CDC") found that 1 in 44 (2.3%) 8-year-old children have been diagnosed with ASD.

31.     This represents an increase from a prior CDC finding that 1 in 68 U.S. children born in 2002 have ASD, which already represented a more than a 100% increase compared with children born a decade prior.

32.     As of 2019, 8.8% of children had been diagnosed with ADHD, or roughly 325,000 children per year.

33.     Parental awareness and changes in diagnoses do not fully account for the rapid rise in these diagnoses.

34.     Rather, neurotoxic exposures, such as prenatal APAP exposure, partly explain a trending increase in diagnoses.

35.     For decades, beginning in 1987, the scientific community has published studies showing that prenatal ingestion of APAP can cause ASD and ADHD.

36.     A 2019 meta-analysis of studies from 1987 to 2016, with relative risks ranging from 1.16 to 1.34, found statistically significant nineteen percent (19%) increased risk of ASD in children whose mothers took APAP during pregnancy.

37.     Since 2013, there have been six European birth cohort studies, examining over 70,000 mother-child pairs, showing the association between prenatal use of APAP and ASD and ADHD, confirming the results of studies dating back to 1987.

38.     The overall body of scientific evidence has shown for decades that prenatal use of APAP can cause ASD and ADHD in the child.

39.     During all relevant times herein, Defendants were engaged in the business of manufacturing and selling the APAP Products in the United States, and the weight of the scientific evidence available showed prenatal exposure to APAP significantly increases the risk of neurodevelopmental disorders in children exposed to APAP prenatally, including but not limited to ASD and ADHD.

40.     At the time Plaintiff Mother was pregnant with Plaintiff Child the scientific evidence regarding the risks of in utero exposure of APAP was available to Defendants, and Defendants knew or should have known that prenatal use of APAP can cause ASD or ADHD.

41.     Moreover, despite scientific evidence that prenatal use of APAP can cause ASD or ADHD, Defendants continued, and continues, to market APAP Products as safe pain relievers for pregnant women, making mothers believe they are choosing a safe drug for even minor aches, pains, and headaches.

**B.    Plaintiff Mother Took APAP Products while Pregnant, and It Caused ASD and ADHD in Plaintiff Child**

42.    Plaintiff Mother began using the APAP Products in or around April 2013 when she was pregnant with her Plaintiff Child.

43.    During her pregnancy, Plaintiff Mother took the APAP Products for pain relief.

44.    Plaintiff Mother believed it was safe for her to take the APAP Products during her pregnancy.

45.    Indeed, Plaintiff Mother was instructed to not take ibuprofen or aspirin while pregnant but was informed she could take APAP freely and without risk.

46.    There is no warning on the APAP Products' labels specifically addressing the risks of ASD and ADHD if a mother ingests APAP while pregnant.

47.    Had Plaintiff Mother known of the risk of taking APAP while pregnant, specifically that it could cause ASD in her child, she would not have taken the APAP Products.

48.    Plaintiff Child was born on February 13, 2013.

49.    Plaintiff Mother started to have concerns about Plaintiff Child's development when she observed delays.

50.    Plaintiff Child was ultimately diagnosed with ASD and has specialized curriculum at school due to his ASD.

51.    Plaintiff Child's ASD puts an incredible strain on Plaintiff Mother and their family.

52.    Plaintiff's Mother fears for Plaintiff Child and experiences substantial stress and anxiety due to the challenges associated with Plaintiff Child's ASD.

**ESTOPPEL AND TOLLING OF STATUTE OF LIMITATIONS**

53.    Due to Defendant's acts of fraudulent concealment, Defendants are estopped from relying on any statutes of limitations or repose.    Such acts include Defendants intentional

concealment from Plaintiff Mother and the general public that APAP is defective when there is prenatal exposure, while continuing to market the APAP Products with the adverse effects described in this Complaint.

54.     Given Defendant's affirmative actions of concealment by failing to disclose information about the defects known to it but not the public information over which Defendants had exclusive control—and because Plaintiff Mother could not reasonably have known that the APAP Products were defective, Defendants are estopped from relying on any statutes of limitations that might overwise be applicable to the claims asserted in this Complaint.

**CLAIMS FOR RELIEF**

**COUNT I: STRICT LIABILITY – FAILURE TO WARN**

55.     Plaintiffs restate, reallege, and incorporate by reference the allegations set forth in the rest of this Complaint as if fully set forth herein.

56.     At the time of Plaintiffs' injuries, the APAP Products were defective and unreasonably dangerous to foreseeable consumers using the APAP Products in a foreseeable manner during pregnancy, including Plaintiff Mother, because they lacked a suitable and adequate warning.

57.     At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, labeling, selling, distributing, and promoting the APAP Products, which were defective and unreasonably dangerous to consumers, including Plaintiff Mother, because they did not contain adequate warnings or instructions concerning the dangerous characteristics of ingesting APAP during pregnancy.  These actions were under the ultimate control and supervision of Defendants.  At all relevant times, Defendants registered, researched, manufactured, distributed, marketed, labeled, promoted, and sold the APAP Products within this

District and aimed the marketing at the ultimate consumer.  Defendants were at all relevant times involved in the retail and promotion of the APAP Products marketed and sold in this District.

58.     Defendants had a duty to warn of the risks associated with the use of the APAP products during pregnancy.

59.     The APAP Products ingested by Plaintiff Mother during pregnancy were in the same or substantially similar condition as they were when they left possession of the Defendants.

60.     Defendants expected and intended the APAP Products to reach users such as Plaintiff Mother in the condition in which the APAP Products were sold.

61.     Plaintiff Mother did not materially alter the APAP Products prior to ingestion.

62.     Plaintiff Mother ingested the APAP Products during pregnancy as indicated on the APAP Products' labels.

63.     Plaintiff Mother was unaware of the defects and dangers of the APAP Products during pregnancy and was specifically unaware that prenatal exposure increases the risk of brain and behavioral development of children in utero.

64.     The labels on the APAP Products to consumers lack any warning specific to pregnant women.  The information that Defendants did provide or communicate to consumers failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiff Mother to utilize the products safely and with adequate protection during pregnancy, or to decide to not use or ingest the APAP Products at all.

65.     This alleged failure to warn is not limited to the information contained on the APAP Products' labeling.  Defendants were able, in accord with federal law, to comply with relevant state law by disclosing the known risks associated with exposure to or use of APAP during pregnancy through other non-labeling mediums, including, but not limited to, promotion,

advertisements, public service announcements, and/or public information sources.  But Defendants did not disclose these known risks through any medium.

66.     At all relevant times, Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, and supply the APAP Products; provide proper warnings for the APAP Products; and take such steps as necessary to ensure the APAP Products did not cause users and consumers, and their children, to suffer from unreasonable and dangerous risks.  Defendants had a continuing duty to warn Plaintiff Mother of dangers associated with exposure to or use of APAP during pregnancy.   Defendants, as a manufacturer, seller, and/or distributor of pharmaceutical medication, is held to the knowledge of an expert in the field.

67.     At the time of manufacture, Defendants could have provided the warnings or instructions regarding the full and complete risks of the APAP Products during pregnancy because Defendants knew or should have known of the unreasonable risks of ASD and ADHD associated with prenatal exposure to and/or the use of such products.

68.     At all relevant times, Defendants failed and deliberately refused to investigate, study, test, or promote the safety of the APAP Products, or to minimize the dangers to consumers of the APAP Products and to those who would foreseeably use or be harmed by the APAP Products, including Plaintiffs.

69.     Defendants failed to adequately warn consumers, like Plaintiff Mother, about the significant increased risk of neurodevelopmental disorders in children exposed to APAP prenatally, including but not limited to ASD and ADHD.

70.     Defendants failed to adequately inform reasonably foreseeable consumers, like Plaintiff Mother, of the proper usage of the APAP Products.

71.     Even though Defendants knew or should have known that APAP posed a grave risk of harm to Plaintiff Child, Defendants failed to exercise reasonable care to warn of the dangerous risks associated with use and prenatal exposure.

72.     Plaintiff Mother was exposed to the APAP Products during pregnancy without knowledge of their dangerous characteristics.

73.     At all relevant times, Plaintiff Mother used and/or was exposed to the use of the APAP Products while using them for their intended or reasonably foreseeable purposes during pregnancy, without knowledge of their dangerous characteristics.

74.     Plaintiff Mother could not have reasonably discovered the defects and risks associated with the APAP Products prior to or at the time of Plaintiff consuming APAP during pregnancy. Plaintiff Mother relied upon the skill, superior knowledge, and judgment of Defendants to know about and disclose serious health risks associated with using the APAP Products.

75.     If Plaintiff Mother had been properly warned of the defects, dangers, and risks associated with prenatal exposure to APAP, Plaintiff Mother would have utilized the APAP Products safely and with adequate protection during pregnancy or would have decided to not ingest the APAP Products at all.  Defendant's failure to properly warn of those defects, dangers, and risks associated with prenatal exposure to APAP was a substantial factor in causing Plaintiffs' injuries and damages.

76.     Defendants are liable to Plaintiffs for injuries caused by Defendants' negligent or willful failure, as described above, to provide adequate warnings or other relevant information and data regarding the appropriate use of the APAP Products and the risks associated with the use of APAP.

77.     As a direct and proximate result of Defendants placing defective APAP Products into the stream of commerce, and Plaintiff Mother's foreseeable use and ingestion of the APAP

Products during pregnancy, Plaintiff Child was exposed to APAP prenatally, causing him to develop ASD.

78.     As a direct and proximate result of Defendants placing defective APAP Products into the stream of commerce, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life. Plaintiffs respectfully seek all damages to which they may be legally entitled.

## COUNT II: NEGLIGENCE

79.     Plaintiffs restate, reallege, and incorporate by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

80.     Although Defendants had a duty to use reasonable care in testing, developing, designing, manufacturing, marketing, labeling, selling, distributing, promoting, and preparing written instructions and warnings for the APAP Products, Defendants failed to do so.

81.     Defendants directly or indirectly, caused the APAP Products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff Mother.  At all relevant times, Defendants registered, researched, manufactured, distributed, marketed, promoted, and sold the APAP Products within this district and aimed at a consumer market within this district.

82.     Defendants knew, or in the exercise of reasonable care should have known, that the APAP Products were defectively and unreasonably designed and/or manufactured, and/or marketed, and were unreasonably dangerous and likely to injure persons that were prenatally exposed to them.  Defendants knew or should have known that Plaintiff Mother was unaware of the dangers and defects inherent in the APAP Products when she was ingesting them during her pregnancy with Plaintiff Child.

83.     At all relevant times, Defendants had a duty to exercise reasonable care in the marketing, advertisement, promotion, and sale of the APAP Products.  defendants' duty of care

owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using APAP during pregnancy and appropriate, complete, and accurate warnings concerning the potential adverse effects of APAP and, in particular, the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP.

84.   At all relevant times, Defendants knew or, in the exercise of reasonable care, should have known of the hazards and dangers of APAP ingestion while pregnant and, specifically, the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP.

85.   Defendants failed to provide any kind of warning to pregnant consumers, like Plaintiff Mother, about the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP.

86.   Accordingly, at all relevant times, Defendants knew or, in the exercise of reasonable care, should have known that use of the APAP Products during pregnancy could cause Plaintiffs' injuries, and thus, create a dangerous and unreasonable risk of injury to the users of these products, including Plaintiffs.

87.   As such, Defendants breached its duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, labeling, supply, promotion, advertisement, packaging, sale, and distribution of the APAP Products, in that Defendants manufactured and produced defective APAP Products, which carry the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP; knew or had reason to know of the defects inherent in the APAP Products; knew or had reason to know that a user's or consumer's use of the APAP Products during pregnancy created a

significant risk of harm and unreasonably dangerous side effects; and failed to prevent or adequately warn of these risks and injuries.

88.     Defendants had a duty to disclose the truth about the risks associated with exposure to or use of APAP during pregnancy in its promotional efforts outside of the context of labeling. Defendants were negligent in its promotion of APAP outside of the labeling context by failing to disclose material risk information as part of its promotion and marketing of the APAP Products, including through the internet, television, and print advertisements.

89.     Despite Defendants' ability and means to investigate, study, and test the APAP Products and to provide adequate warnings regarding use during pregnancy, Defendants failed to do so. Indeed, Defendants wrongfully concealed information and further made false and/or misleading statements concerning the safety and use of APAP.

90.     Defendants' negligence included:

a.     Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing the APAP Products while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of APAP and the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP, and, consequently, the risk of serious harm associated with human use of APAP during pregnancy;

b.     Failing to undertake sufficient studies and conduct necessary tests to determine whether or not the APAP Products were safe for its intended consumer use and unborn children;

c.     Failing to provide adequate instructions, guidelines, and safety precautions to those persons Defendants could reasonably foresee would use the APAP Products during pregnancy;

d.      Failing to disclose to Plaintiff Mother, users, consumers, and the general public that use of APAP during pregnancy presents severe risks of neurodevelopmental disorders in children exposed to APAP prenatally;

e.      Failing to warn Plaintiff Mother, users, consumers, and the general public that the APAP Products' risk of harm was unreasonable and that there were safer and effective alternative medications or treatments available to Plaintiff Mother and other users and/or consumers;

f.      Representing that the APAP Products were safe for their intended purposes for pregnant women when, in fact, Defendants knew or should have known the APAP Products were not safe for their intended purposes;

g.      Declining to make or propose any changes to the APAP Products' labeling or other promotional materials that would alert users, consumers, and the general public of the risks of APAP, including to pregnant women;

h.      Advertising, marketing, and recommending the use of the APAP Products during pregnancy, while concealing and failing to disclose or warn of the dangers known by Defendants to be caused by the use of or exposure to APAP;

i.      Continuing to disseminate information to its consumers and the general public, which indicates or implies that the APAP Products are not unsafe for pregnant consumer use; and

j.      Continuing the manufacture and sale of the APAP Products with the knowledge that the APAP Products were unreasonably unsafe and dangerous.

91.      Defendants knew and/or should have known that it was foreseeable that children such as Plaintiff Child would suffer injuries as a result of Defendant's failure to exercise ordinary

care in the manufacturing, marketing, labeling, distribution, and sale of the APAP Products to pregnant consumers, like Plaintiff Mother.

92.     Plaintiff Mother did not know the nature and extent of the injuries that could result in her child from the intended use of and/or exposure to APAP prenatally.

93.     Defendant's negligence was a proximate cause of Plaintiffs' injuries, i.e., absent Defendant's negligence, Plaintiff Child would not have developed ASD.  That negligence was a substantial factor in causing Plaintiffs' injuries and damages.

94.     Defendant's conduct, as described above, was reckless. Defendants regularly risked exposing Plaintiff Mother to the APAP Products while pregnant with Plaintiff Child, with full knowledge of the dangers of the APAP Products and that it could cause ASD in Plaintiff Child. Defendants made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiff Mother.  Defendant's reckless conduct therefore warrants an award of punitive damages.

95.     As a direct and proximate result of Defendants placing the defective APAP Products into the stream of commerce, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life. Plaintiffs respectfully seek all damages to which they may be legally entitled.

### COUNT III: BREACH OF EXPRESS WARRANTY

96.     Plaintiffs restate, reallege, and incorporate by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

97.     At all material times, Defendants manufactured, marketed, sold, distributed, and otherwise placed into the stream of commerce the APAP Products.  These actions were under the ultimate control and supervision of Defendants.

98.    In advertising, marketing, and promoting the APAP Products to consumers, like Plaintiff Mother, Defendants expressly warranted that the APAP Products were safe for use and reasonably fit for their intended purposes, including use by pregnant mothers.  In advertising, marketing, and otherwise promoting the APAP Products, Defendants intended for pregnant consumers to rely upon its representations regarding safety and fitness, in an effort to induce them to purchase and consume the APAP Products during pregnancy to relieve pain.

99.    Defendants expressly warranted to Plaintiff Mother and pregnant consumers that the APAP Products were safe for ingestion during pregnancy.

100.    Defendants had a duty to exercise reasonable care in the research, development, design, testing, packaging, manufacture, inspection, labeling, distributing, marketing, promotion, sale, and release of the APAP Products, including a duty to:

a.    ensure that the APAP Products during pregnancy did not cause users and their unborn children unreasonably dangerous side effects;

b.    warn of dangerous and potentially incurable side effects; and

c.    disclose adverse material facts, such as the true risks associated with the use of and exposure to APAP during pregnancy, when making representations to users, consumers, and the general public, including Plaintiff Mother.

101.    Defendants had the ability to properly disclose the risks associated with APAP usage during pregnancy through multiple channels, not just labeling.

102.    At all relevant times, Defendants expressly represented and warranted to the purchasers of the APAP Products, by and through statements made by Defendants in labels, publications, brochures, and other written materials intended for consumers and the general public, that the APAP Products were safe to human health and the environment, effective, fit, and proper for their intended use during pregnancy.  Defendants advertised, labeled, marketed, and promoted

the APAP Products, representing the quality to consumers and the public in such a way as to induce their purchases or use during pregnancy, thereby making an express warranty that the APAP Products would conform to the representations.

103.    The representations about the APAP Products, as set forth herein, contained or constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, creating an express warranty that the goods would conform to the representations.

104.    Defendants breached express representations and warranties made to Plaintiff Mother, with respect to the APAP Products, including the following:

a.    Defendants represented through its labeling, advertising, and marketing materials that the APAP Products were safe for use during pregnancy, and intentionally withheld and concealed information about the risks of serious injury associated with use of APAP and by expressly limiting the risks associated with use during pregnancy within its warnings and labels; and

b.    Defendants represented that the APAP Products were safe for use and intentionally concealed information that demonstrated that APAP carries the significantly increased risk of causing neurodevelopmental disorders in children through prenatal exposure to APAP, and that the APAP Products, therefore, were not safer than alternatives available on the market.

105.    Plaintiff Mother detrimentally relied on the express warranties and representations of Defendants concerning the safety and/or risk profile of APAP during pregnancy in deciding to purchase the APAP Products.  Plaintiff Mother reasonably relied upon Defendants to disclose known defects, risks, dangers, and side effects of APAP.  Plaintiff Mother would not have purchased or used the APAP Products during pregnancy had Defendants properly disclosed the

risks associated with the APAP Products, either through advertising, labeling, or any other form of disclosure.  Defendant's breach of the express warranties and representations concerning the safety and/or risk profile of APAP during pregnancy was a proximate cause of Plaintiffs' injuries and damages.

106.    Plaintiff Mother had no knowledge of the falsity or incompleteness of Defendants' statements and representations concerning the APAP Products.

107.    Plaintiff Mother used and/or was exposed to APAP during pregnancy as researched, developed, designed, tested, manufactured, inspected, labeled, distributed, packaged, marketed, promoted, sold, or otherwise released into the stream of commerce by Defendants.

108.    Had the warnings, labels, advertisements, or promotional material for the APAP Products accurately and adequately set forth the true risks associated with the use of such Products during pregnancy, including Plaintiffs' injuries, rather than expressly excluding such information and warranting that the APAP Products were safe for their intended use, Plaintiffs could have avoided the injuries complained of herein.

109.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life.  Plaintiffs respectfully seek all damages to which they may be legally entitled.

## COUNT IV: BREACH OF IMPLIED WARRANTY

110.    Plaintiffs restate, reallege, and incorporate by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

111.    At all material times, Defendants manufactured, marketed, sold, distributed, and otherwise placed the APAP Products into the stream of commerce.

112.   At all material times, Defendants intended for the APAP Products to be consumed and ingested by pregnant women, like Plaintiff Mother; and Defendants impliedly warranted that the APAP Products and their component parts were of merchantable quality, safe, fit for such use, and adequately tested.

113.   Defendants were aware that consumers, including Plaintiff Mother, would consume and ingest the APAP Products as directed by the Products' labels and promotional materials. Therefore, Plaintiff Mother was a foreseeable user of the APAP Products.

114.   But Defendants failed to disclose that APAP has dangerous propensities when used as intended during pregnancy and that use of the APAP Products carries an increased risk of developing severe injuries, including Plaintiff Child's injuries.

115.   The APAP Products were expected to reach, and did in fact reach consumers, including Plaintiff Mother, without substantial change in the condition in which they were manufactured and sold by Defendants.

116.   Plaintiff Mother was an intended beneficiary of the implied warranties made by Defendants to purchasers of the APAP Products, including Plaintiff Mother.

117.   In reliance upon Defendants' implied warranties, Plaintiff Mother purchased and used the APAP Products as indicated, and in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.  The failure of the APAP Products to be of merchantable quality and to be safe or fit for their intended use was a proximate cause of Plaintiffs' injuries and damages.

118.   Defendants breached its implied warranties to Plaintiffs in that the APAP Products were not of merchantable quality, nor were they safe or fit for their intended use.

119.    The harm caused by the APAP Products far outweighed their benefit, rendering the APAP Products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

120.    As a direct and proximate result of Defendant's breach of implied warranties of merchantability and fitness for a particular purpose, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life.  Plaintiffs respectfully seek all damages to which they may be legally entitled.

## COUNT V: VIOLATION OF CONSUMER PROTECTION LAWS

121.    Plaintiffs restate, reallege, and incorporate by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

122.    Plaintiff Mother purchased and used the APAP Products for primarily personal use and pain relief during pregnancy, thereby suffering ascertainable losses as a result of Defendant's actions in violation of the consumer protection laws.

123.    Had Defendants not engaged in the deceptive conduct described in this Complaint, Plaintiff would not have purchased and/or paid for the APAP Products, and Plaintiffs would not have incurred related injury medical costs.

124.    Defendants engaged in wrongful conduct and unlawful while at the same time obtaining under false pretenses moneys from Plaintiff for the APAP Products.  Those moneys would not have been paid had Defendants not engaged in unfair and deceptive conduct. Plaintiffs actually relied upon Defendant's misrepresentations and deception concerning the APAP Products.

125.    Defendants engaged in the following unfair methods of competition or deceptive acts or practices, which are proscribed by law:

a.    knowingly making false representations as to the characteristics, ingredients, uses, benefits, or qualities of goods for sale;

b.    advertising goods or services with the intent not to sell them as advertised;

c.    engaging in fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding.

126.    Plaintiffs were injured by the cumulative nature of Defendant's conduct.  The cumulative effect, directed at patients, physicians, and consumers, was to create demand for and sell the APAP Products.  Each aspect of Defendant's conduct combined to artificially create sales of the APAP Products, including to Plaintiff Mother who did, in fact, purchase the APAP Products.

127.    Defendants had a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, labeling, development, manufacture, promotion, and sale of the APAP Products.

128.    Defendant's deceptive, unconscionable, or fraudulent representations and material omissions to consumers, including Plaintiff Mother, constitute unfair and deceptive acts and trade practices in violation of the federal and state consumer protection statutes listed below.

129.    Defendant's actions, as complained of in this Complaint, constitute unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or trade practices in violation of the federal and state consumer protection statutes listed below.

130.    Defendants has engaged in unfair competition, or unfair or deceptive acts or trade practices, or has made false representations under the following statutes:

- 15 U.S.C. §§ 2301–12 (1982);

- N.R.S. § 598.0901 et seq.;

131.    To protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices, and false advertising, Defendants, as the supplier, manufacturer,

advertiser, and seller, is subject to liability under the above legislation enacted against unfair, deceptive, fraudulent, and unconscionable consumer sales practices.

132.    By knowingly and falsely representing that the APAP Products were fit to be used for the purposes for which they were intended—when in fact they were defective and dangerous when used during pregnancy—and by other acts alleged, Defendants violated the above statutes, enacted to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices, and false advertising.

133.    Defendant's actions and omissions are uncured or incurable, deceptive acts under the above legislation.

134.    Defendants had actual knowledge of the defective and dangerous conditions of the APAP products but failed to take any action to cure such defective and dangerous conditions.

135.    Plaintiff Mother relied upon Defendant's misrepresentations and omissions in determining which APAP Products (if any) to ingest.

136.    Defendant's deceptive, unconscionable, or fraudulent representations and material omissions to consumers constituted unfair and deceptive acts and practices.

137.    By reason of the unlawful acts in which Defendants engaged, and as a direct and proximate result thereof, Plaintiffs have suffered ascertainable losses and damages.

138.    As a direct and proximate result of Defendant's violations of the above-listed legislation, Plaintiffs have sustained economic losses and other damages and are entitled to statutory and compensatory damages in an amount to be proven at trial and civil penalties as permitted by law.

## COUNT VI: NEGLIGENT MISREPRESENTATION

139.    Plaintiffs restate, reallege, and incorporate by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

140.    Defendants had a duty to accurately and truthfully represent to consumers, including to Plaintiff Mother and to the public, that the APAP Products had not been adequately tested and found to be a safe and effective treatment for pregnant women.  Defendants breached that duty as its representations of the safety of the APAP Products were false.  Defendants intended for consumers like Plaintiff Mother to rely upon that representation, Plaintiff Mother did justifiably rely on Defendant's misrepresentations concerning the APAP Products' high risk of unreasonable and dangerous adverse side effects when ingested or used during pregnancy.

141.    Defendants failed to exercise ordinary care in the representations concerning the APAP Products while Defendants were involved in its manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants negligently misrepresented the APAP Products' high risk of unreasonable and dangerous adverse side effects when ingested or used during pregnancy.

142.    Defendants also breached its duty in representing to Plaintiff Mother that the APAP Products had no serious side effects when ingested during pregnancy.  Defendants intended for consumers like Plaintiff Mother to rely upon that representation, and Plaintiff Mother did justifiably rely upon that representation.

143.    Defendants knew or had reason to know that the APAP Products had been insufficiently tested or had not been tested at all; and that they lacked adequate and accurate warnings, and created a high risk, or a higher than acceptable reported and represented risk, of adverse side effects.  Those side effects include neurodevelopmental disorders in children, such as ASD. Thus, Defendants lacked reasonable ground for believing the representations to be true and intended for consumers like Plaintiff to rely upon those misrepresentations by purchasing the APAP products for use during pregnancy.   Plaintiff Mother justifiably relied upon those misrepresentations in purchasing and using the APAP products while pregnant.   Defendant's

negligent misrepresentations concerning the safety and/or risk profile of using APAP during pregnancy was a substantial factor in causing Plaintiffs' injuries and damages.

144.    As a direct and proximate result of Defendant's negligent misrepresentation, Plaintiffs have suffered permanent injuries, significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life.  Plaintiffs respectfully seek all damages to which they may be legally entitled.

## **PUNITIVE DAMAGES**

145.    Plaintiffs restate, reallege, and incorporate by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

146.    Defendants have acted with malice, express or implied, through conduct that is intended to injure a person or despicable conduct that was engaged in with a conscious disregard for the rights or safety of others, including Plaintiffs, and has acted with oppression in subjecting Plaintiffs to despicable conduct that subjected them to cruel and unjust hardship with conscious disregard for their rights.  Further, Defendants have fraudulently and intentionally misrepresented or concealed material facts known to it with the intention of depriving Plaintiffs of their rights or to otherwise injure them.

147.    Defendants failed to adequately test and study the APAP Products to determine and ensure that the APAP Products were safe and effective for use during pregnancy before releasing them for sale for human consumption.

148.    Further, Defendants continued to manufacture and sell the APAP Products and marketed them for use during pregnancy, even after obtaining knowledge and information that the APAP Products were defective and unreasonably unsafe because they, among other things, did not include adequate warnings.

149.    Defendants were aware of the probable consequences of the dangerous and defective product, including the risk of neurodevelopmental disorders in children, such as ASD and ADHD, when they suffered prenatal exposure.

150.    At all material times, Defendants knew or should have known that the APAP Products were inherently dangerous with respect to the following: the risk of neurodevelopmental disorders in children, such as ASD and ADHD, when they suffered prenatal exposure; pain and suffering; loss of life's enjoyment; and unsuccessful treatments to cure the conditions proximately related to the use of the APAP Products, as well as the other permanent and lasting severe personal injuries.

151.    Defendants knowingly withheld material information from consumers and the public, including Plaintiff Mother, concerning the safety and efficacy of the APAP Products during pregnancy, which deprived Plaintiff Mother of vitally necessary information with which to make a fully informed decision about whether to use the APAP Products while pregnant.

152.    At all material times, Defendants also knew and recklessly and/or intentionally disregarded the fact that the APAP Products, when used during pregnancy, can cause debilitating and life-altering side effects with greater frequency than safer alternative methods, products, and/or treatments.  But Defendants recklessly failed to advise the medical community and the general public, including Plaintiff Mother, of that fact.

153.    At all material times, Defendants intentionally misstated and misrepresented data; and Defendants continue to misrepresent data so as to minimize the perceived risk of injuries and the rate of complications caused by or associated with the APAP Products.

154.    Notwithstanding the foregoing and the growing body of knowledge and information regarding the true and defective nature of the APAP Products, with their increased risk of side effects and serious complications, Defendants continue to aggressively market the

APAP Products to consumers, including the pregnant community at large, without disclosing the true risk of the complications and side effects.

155.    When Plaintiff Mother consumed the APAP Products and since then, Defendants has known the APAP Products were defective and unreasonably dangerous without an adequate warning.  But Defendants continued to manufacture, produce, assemble, market, distribute, and sell the APAP Products to the pregnant community so as to maximize sales and profits at the expense of the health and safety of expecting mothers in a conscious, reckless, and/or intentional disregard of the likely and foreseeable harm caused by the APAP Products to members of the public, including Plaintiffs.

156.    At all material times, Defendants have concealed and/or failed to disclose to the public the serious risks and the potential complications associated with the APAP Products, so as to ensure continued and increased sales and profits and to the detriment of the public, including Plaintiffs.

157.    Defendant's acts and omissions are of such character and nature so as to entitle Plaintiffs to an award of punitive damages in accordance with applicable statutory and common law.  Defendant's conduct shows malice, oppression, or fraud, or that entire want of care, raising the presumption of conscious indifference to consequences of that conduct, thereby justifying an award of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants individually, and jointly and severally.  Plaintiffs also request compensatory damages, punitive damages, or enhanced compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## **PRAYER FOR RELIEF**

Plaintiffs demand judgment against Defendants, individually, and jointly and severally, and prays for the following relief in accordance with applicable law and equity:

1.      Compensatory damages to Plaintiffs for past, present, and future damages, including pain and suffering for severe and permanent personal injuries sustained by Plaintiffs, permanent impairment, mental pain and suffering, loss of enjoyment of life, health and medical care costs, economic damages, together with interest and costs as provided by law;

2.      Restitution and disgorgement of Defendant's profits;

3.      Applicable statutory penalties;

4.      Punitive or enhanced damages;

5.      Reasonable attorneys' fees as provided by law;

6.      Past and future costs of all proceedings;

7.      All ascertainable economic damages;

8.      Prejudgment interest on all damages as allowed by law; and

9.      Such other and further relief as this Court deems just and proper.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury on all issues so triable.

Dated this 29th day of July, 2022.

WETHERALL GROUP, LTD.

By:    */s/Peter C. Wetherall*
      Peter C. Wetherall, Esq.
      Nevada Bar No. 4414
      6671 S. Las Vegas Blvd., Suite 210
      Las Vegas, Nevada 89119

      Mikal C. Watts (*Pro Hac Vice* forthcoming)
      Texas State Bar No. 20981820
      Alicia D. O'Neill (*Pro Hac Vice*
      forthcoming)
      Texas State Bar No. 24040801
      WATTS GUERRA LLC
      5726 W. Hausman Dr., Suite 119
      San Antonio, Texas 78249

      *Attorneys for Plaintiff*